HORACE B. BURR

*v.*

HENRY L. NIVISON et al.

[Submitted March 18th, 1908.   Decided April 7th, 1908.]

1. In a suit for the cancellation of a contract to sell certain land, evidence *held* insufficient to warrant a finding that the contract was altered after it was signed.

2. Where a broker acting for plaintiff in the sale of certain land procured a contract on Sunday, by which plaintiff agreed to sell the land to R. but the contract was not delivered to the purchaser until the following Monday, it was not objectionable as a violation of the Sunday law.

*Messrs. Parker & Van Gelder,* for the complainant.

*Mr. Thomas P. Fay,* for the defendants.

HOWELL, V. C. (orally).

This suit is brought for the purpose of setting aside a contract made on its face between the complainant, Horace B. Burr, and a man named Rosenstein. It appears to have been made on Sunday, the 21st day of July, 1907. The actual participants in the making of it are the complainant, Mr. Burr, and the defendant, Mrs. Nivison, Mr. Burr claiming that Mrs. Nivison was acting on her own behalf; Mrs. Nivison and the other defendant, Rosenstein, maintaining that Mrs. Nivison was acting as Rosenstein's agent.

Mrs. Nivison first approached anyone for the purchase of the farm in question in the month of May, 1907. Negotiations were then opened, but they were not successful. They were opened again in June, and, I think, up to the time of the ending of the June negotiations there is no question but what Mrs. Nivison was acting for herself and not as agent for anybody else. The question of agency is a question I am going to reserve, because it is connected with another question in the case and it may become decisive of the whole matter.

Negotiations were opened again between Mrs. Nivison, either on her own behalf or as agent for somebody else, in the early part of the month of July, 1907, and there eventuated into a conference with the younger Burr on the farm on Saturday, July 20th, 1907. The conversation there related to the sale of the farm to Mrs. Nivison. The younger Burr was posted as to the price which his father was willing to take. He stated the terms upon which his father would sell the property. There was to be so much paid in all, so much paid down, and so much paid in October, and so much left on mortgage. The younger

Burr and Mrs. Nivison were both well enough pleased with the terms. I do not think that the younger Burr had any authority to bind his father; in fact, it was for lack of that authority that he sent Mrs. Nivison to see his father, who lived in Fairfield, Connecticut. Mrs. Nivison went to Fairfield, Connecticut, on the following day, on Sunday, and it does not appear that up to that time she saw the complainant, the elder Burr, that she ever disclosed to anybody the fact that she was purchasing for anybody but herself. And there we run into the question of agency again. Mr. Burr met Mrs. Nivison and the agreement in question was executed. It was written by Mrs. Nivison and it was signed by Mr. Burr. It appears on the face to be made between Mr. Burr and Mr. Rosenstein. It is claimed on behalf of Mr. Burr that he did not know that Mr. Rosenstein's name was being inserted, and thought that he was dealing with Mrs. Nivison only. He thought likewise that the paper which he signed was written on one side of the sheet only. It is quite evident that Mr. Burr is entirely mistaken on both of those questions. There is no doubt in my mind but what the name of Mr. Rosenstein was written in the agreement at the time it was written. There is no evidence of any erasures or any change in the names whatever, and it is quite as evident that the paper was written on two sides of the sheet at the time he signed it. As to the date when that was put on, it seems to me, under the evidence, to make little or no difference. As to when it was witnessed by Mrs. Nivison, or as to when she put the witness clause on, it seems to me to make no difference.

So we start out with an agreement by which Mr. Burr agreed to convey to Mr. Rosenstein the tract of land in question upon certain terms, which were set out in the agreement. At the time the agreement was signed there was a payment made on account of the purchase of $200 by the check of Mr. Rosenstein, which was subsequently redelivered by him to Mrs. Nivison. As to whether the $300 provided for in the contract was tendered on the following Tuesday or not, there is a dispute. That it was tendered later in the week I think is quite clear, and during that week it is also quite clear that Mr. Burr repudiated his contract and attempted to rescind it, and he now files a bill to

rescind and set aside this whole contract on two grounds—*first,* on the ground of fraud, and *second,* because the contract was executed on Sunday and is therefore violative of the Connecticut Sunday law. I will deal only with the question of fraud to-day.

I do not think that the fraud which is relied upon in the bill has been made out. The fraud consists, according to the terms of the bill, in a representation made by Mrs. Nivison to Mr. Burr, the elder, that the terms which she had offered on Saturday, July 20th, to his son, Eben H. Burr, were fully acceded to by him, and were entirely satisfactory to him, and that it was on the faith of that representation that he entered into the contract, and that he had subsequently discovered that he had been defrauded in that particular, namely, that the contract was not satisfactory to his son. Well, now, so far as I can understand this testimony, the contract which the old gentleman made on Sunday is exactly the contract which was talked about and practically agreed upon between the younger Burr and Mrs. Nivison on Saturday.

I have scanned this testimony, as it came out, very closely, for the purpose of seeing whether there was any difference whatever between the terms that were offered to her by Mr. Eben Burr and the terms which she eventually got from the complainant, Mr. Horace Burr, and I fail to see that there is any difference. The dissatisfaction which either the young man had over the matter, or which the old man felt when he found that he had bound himself, was a dissatisfaction that arose after the contract was made, entirely and completely, and, as I said before, I see no variation between the contract that was tendered by the young man on Saturday and the contract that was executed by the old man on Sunday. So, on the ground of fraud, which is charged in the bill, I think the complainant must fail.

But he says that the contract was made on Sunday, and that according to the Connecticut law it is void. The defendant says it was made, the paper was written on Sunday, but it was not delivered until Monday, and that raises a question of fact, so that there is both a question of law and a question of fact yet remaining, the question of fact being whether Mrs. Nivison was the agent of Mr. Burr or whether she was the agent of

Mr. Rosenstein, and the question of law being the effect of the Connecticut Sunday law.

For the purpose of deciding this case I shall assume that the Sunday law of Connecticut is as is claimed on the part of the complainant, and that the agreement in question if executed and delivered on Sunday in the State of Connecticut is governed by the Connecticut law and is absolutely unenforcible. If the agreement had been on its face an agreement between Mr. Burr and Mrs. Nivison, such would be the effect of the application of the Connecticut law to it. Likewise, if Mrs. Nivison had been the agent for Mr. Rosenstein the same result would have followed, because there then would have been an actual execution of the agreement and a delivery of it to Mrs. Nivison on Sunday, but if Mrs. Nivison was the agent of Mr. Burr, a different situation arises. Then the agreement would be binding because it was not delivered to Mr. Rosenstein until the following Monday, and this I conceive to be the fact.

There is evidence of some weight to the effect that Mr. Burr had agreed to pay Mrs. Nivison a commission for making the sale of the farm for him; that Mr. Rosenstein in person and with his wife visited the farm and had some talk with the younger Burr about it on his own account on July 20th, the day before Mrs. Nivison went to Fairfield; that a deposit was made by Mr. Rosenstein's check, which came into the hands of the vendor on Sunday and remained in his possession until the following Thursday; that the tender of the second payment of $300 was made by Mr. Rosenstein, first by his own check and afterwards with his own money. There was no evidence tending to show that Mrs. Nivison was the agent of Rosenstein. On the contrary, it appeared that Mrs. Nivison dealt with him by the ordinary methods of real estate agents, by exhibiting to him several other farms that were for sale in the neighborhood, the inference being that she had been authorized by the owners to make sale for them.

I therefore conclude that the agreement was not delivered to the real vendee until Monday, July 22d, and that it is a valid instrument.

The bill should be dismissed, with costs.